**JIM BEAM BRANDS CO., INC., Plaintiff,**

v.

**BEAMISH & CRAWFORD, LTD., Defendant.**

**No. 89 Civ. 5835 (RO).**

United States District Court, S.D. New York.

May 4, 1994.

Mercer L. Stockell, William G. Pecau, Jonathon E. Moskin, Pennie & Edmonds, New York City, for plaintiff.

Martin P. Endres, Hedman, Gibson, Costigan & Hoare, P.C., New York City, for defendant.

## OPINION AND ORDER

OWEN, District Judge.

This action is before me on remand from the Second Circuit, *Jim Beam Brands Co. v. Beamish & Crawford Ltd.,* 937 F.2d 729 (2nd Cir.1991) familiarity with which is presumed. Plaintiff Jim Beam Brands Co., alleging trademark infringement and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.* (1988) as well as

state-law claims of trademark infringement and false advertising, seeks to enjoin sales in the United States of an Irish stout called BEAMISH.

Jim Beam is a maker of distilled alcoholic beverages, notably JIM BEAM Kentucky bourbon whisky and related products. It has manufactured and sold bourbon whiskey since 1795. More recently it has broadened its line to include tequila, pre-mixed alcoholic drinks and other products. "JIM BEAM" is the name of its principal product, though other products are derivatives of the BEAM name alone: BEAM'S CHOICE, BEAME-RO, BEAM'S BLACK LABEL. These marks are registered with the United States Patent and Trademark Office. Beam has never manufactured or sold beer, ale, or stout.

Defendant Beamish & Crawford Ltd ("B & C") is a corporation existing under the laws of Ireland that produces BEAMISH stout, a rich, dark, heavily malted beer. Since 1792 B & C has manufactured and sold Beamish stout in Ireland, its efforts largely centered in the city of Cork. B & C is now a wholly-owned subsidiary of Carling O'Keefe Breweries of Canada, Ltd., a subsidiary of the Foster's Brewing Group, Ltd., the fourth largest brewer in the world.

In August 1983, B & C registered the Beamish stout trademark in the United States, but in November 1983, Jim Beam brought a proceeding before the Trademark Trial and Appeal Board to cancel B & C's BEAMISH registration, contending that there was a likelihood of confusion between the BEAM and BEAMISH marks. While the Board denied Jim Beam's petition, stating that the marks were sufficiently dissimilar and that stout beer and bourbon whisky were "distinctly different products" whose origins were unlikely to be confused, the United States Court of Appeals for the Federal Circuit reversed, holding that the Board had erroneously stressed the dissimilarities of the products and the marks, and that since the word BEAM was at the heart of the two alcoholic beverages, confusion was likely. The Court accordingly cancelled B & C's registration for BEAMISH in March 1989.

In August 1989, Jim Beam commenced this action alleging Lanham Act trademark infringement and state-law claims of trademark dilution and false advertising. It sought an injunction against the use of the BEAMISH mark in the United States. Jim Beam then moved for summary judgment on collateral estoppel grounds which I reluctantly granted in October 1990.

On appeal, however, the Second Circuit disagreed. It held collateral estoppel inapplicable because the Federal Circuit had before it a cancellation proceeding, whereas the issue here is trademark infringement, and "though worded similarly, the issue of likelihood of confusion in a cancellation proceeding may be different from the issue of likelihood of confusion in an action for infringement." 937 F.2d at 734.

Further, the Second Circuit held that equitable considerations may be considered in determining the scope of relief granted if the likelihood of confusion issue were to be decided against B & C by this Court.

Under the Lanham Act:

[a]ny person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

.     .     .     .     .

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a)–(b).

Similarly:

[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof ... which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin,

sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin or his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (1988).

■ Accordingly, the cornerstone of a federal trademark infringement claim is whether there is a likelihood of confusion among potential customers. *IMAF, S.P.A. v. J.C. Penney Co., Inc.,* 806 F.Supp. 449 (S.D.N.Y.1992). The burden of proof is on the plaintiff. Factors to be assessed include, the strength of the marks; similarity of the marks; the proximity of the products; bridging the gap (the likelihood that the defendant will enter the plaintiff's market); actual confusion and good faith of the accused user and the quality of defendant's product. *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2nd Cir.) *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). Extensive though it is, this list does not exhaust the possibilities—other variables may be taken into account, and no single factor is determinative. *W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.,* 984 F.2d 567, 572 (2d Cir.1993).

■ Turning to those factors, the strength of the mark refers to the ability of a mark to identify the source of the goods. In August of 1986, the plaintiff commissioned the Gallup Organization to conduct an omnibus survey, which showed that Jim Beam has tremendous awareness and a very strong association with alcoholic beverage products, whereas the Beam name by itself has very low awareness and a very unclear association.

In 1990 plaintiff commissioned Dr. Jacob Jacoby to design another survey to determine the awareness level of the name BEAM among consumers of alcoholic beverages in the United States. Dr. Jacoby's study however, I find to have questionable value because his questions were leading. Even so, the study does show that consumers have a greater awareness of JIM BEAM than of BEAM alone; more than half of the respondents associate BEAM with JIM BEAM or bourbon. Less than 1% of the respondents associated BEAM with beer.

Jim Beam then commissioned Barry O'Neil of the Roper Organization to conduct a survey to determine the awareness level of the name BEAMISH among consumers of alcoholic beverages in the United States. The results indicate that BEAMISH had minimal awareness in this country as a beer or ale; indeed, only 11% of the respondents claimed they knew of BEAMISH at all.

The studies provide conflicting statistics. JIM BEAM may be one of the more recognized marks in this country, at least by those over the age of twenty-one. BEAM alone, however, is quite obscure. Certainly, JIM BEAM is a strong mark, long known for its Kentucky-style straight bourbon whisky and related products. But it is precisely this strength that makes it unlikely to be confused with an Irish stout product. While Jim Beam has endeavored to take advantage of the good will in its JIM BEAM name by marketing products such as BEAMERO brand tequila and, for a time, BEAMEISTER white wine, Jim Beam has never seriously considered entering the beer market, nor does it have any future plans to do so.[1] Thus, from this point forward, the sole comparison I make is between *JIM* BEAM and BEAMISH.

Next, the Court can in this case consider the similarity of the marks and the proximity of the products together. First, is the similarity of the marks great enough to create a likelihood of confusion among potential customers? *McGregor–Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1133 (2d Cir.1979). In assessing similarity, the court must consider the general impression created by the marks, i.e., its packaging, labels, logos, and color. *W.W.W. Pharmaceutical,* 984 F.2d at 573.

1. The fact that it uses a malt alcohol for its JIM BEAM and Cola pre-mixed drinks does not make it an entrant in the beer market.

JIM BEAM and its related products are sold in bars, restaurants, or liquor stores. BEAMISH would be sold through the same outlets. BEAMISH would also be sold in supermarkets, where in many states JIM BEAM and Cola, JIM BEAM and Ginger Ale, and JIM BEAM and Lemonade products are sold. Where the bottles and labels of the products are visible—in supermarkets or liquor stores—I see no reason to believe that any consumer would think that BEAMISH is a Jim Beam product. The bottles are distinctive. BEAMISH is sold only in the 12–ounce bottles traditionally associated with beer; JIM BEAM is sold only in liquor bottles of varying sizes. Plaintiff's pre-mixed beverages are sold in cans, and though beer is often sold in cans as well, BEAMISH is not. Further, the pre-mixed products are marked as JIM BEAM in large black letters, "Kentucky Straight" follows in smaller letters, with BOURBON WHISKY in red boldface below—this is unmistakably and unambiguously a whisky product.

The BEAMISH label not only looks different in arrangement and color, but it clearly identifies the products as an Irish stout, brewed in County Cork, Ireland. It identifies the brewer as "Beamish & Crawford, P.L.C." or "L.T.D."—incorporation designations that signal a foreign maker to all but the least astute consumer. The cardboard carrier prominently proclaims that the product is imported from Ireland—indeed, "imported" is emblazoned on every side of the case. The product's Irish heritage is its most salient marketing point. Jim Beam products contrariwise base their appeal on the heritage of the American South. Every Jim Beam product with the exception of BEAMERO tequila and the ill-fated BEAMEISTER wines prominently features "Kentucky," and many of the company's advertisements stress the down-home nature of the distillery still located in Lynchberg, Virginia. BEAMERO tequila states its Mexican origins on both the neck and body of the bottle, and the BEAMEISTER wines were clearly marked as "Imported from Germany." Consequently, customers viewing the labels are therefore unlikely to confuse the products.

In bars and restaurants where the bottles and their respective trade dresses are less conspicuous—a bottle of Jim Beam may be in evidence on the shelf behind the bar, and BEAMISH stout may be sold on tap—a patron generally asks the bartender or waiter what he or she desires and that patron will have no confusion if what is served is stout instead of bourbon, or vice versa—"Take it back!" The foregoing analysis covers the issue of proximity at point of sale adversely to Jim Beam as well.

Next, since plaintiff has not demonstrated any intention of entering the beer or stout market, the "bridging the gap" factor of *Polaroid* needs no discussion.

■ Turning to the issue of whether or not there is actual confusion, I observe at the outset here that the Lanham Act is intended to prevent consumer confusion that would enable the seller to pass off his goods as those of another. *Lang v. Retirement Living Publishing Co. Inc.*, 949 F.2d 576, 582 (2d Cir.1991). Although evidence of actual confusion is not required for a finding of trademark infringement or unfair competition, such a finding strengthens a plaintiff's case. Beamish contends that since there is no evidence of actual confusion, there can be no infringement. This may be explained by the fact that significant quantities of BEAMISH have not been available in the United States. JIM BEAM, however, is sold in Ireland, and evidence of confusion there, if any, has not been presented. The absence of evidence in this area is significant.

Finally, there is no question here as to Beamish's good faith. Since B & C's use of the mark BEAMISH predated Colonel Beam's first batch of bourbon, and has been in the family for generations until Richard Pingott Beamish recently retired from active employ and died, obviously, B & C did not adopt its mark with the intention of capitalizing on Jim Beam's reputation and goodwill. *Edison Brothers Stores, Inc. v. Cosmair, Inc.*, 651 F.Supp. 1547, 1560 (S.D.N.Y.1987). Nor is there more than some mere suggestion that BEAMISH is anything less than a premium quality stout and that therefore Jim Beam is entitled to protect the reputation of its mark from potential tarnishment.

*W.W.W. Pharmaceutical,* 984 F.2d at 575. Indeed, that *Polaroid* factor is hardly relevant here.

Finally, in addition to concluding that the *Polaroid* factors line up markedly in Beamish's favor, I note again that equitable considerations are strong here, and on this remand militate against enjoining the use of a family name that has designated this quality product, with few interruptions, since 1792—three years longer than Jim Beam. (See my prior Opinion and Order dated October 15, 1990, p. 2). Consequently, in the total picture, under the Lanham Act, I find no justification, either in law or equity, for an injunction prohibiting the marketing of Beamish stout in the United States, and under that rubric, the injunction is denied and the action is dismissed.

■ Finally, the state-law claims asserted by Jim Beam fall for the same reasons. These are claims of unfair competition under New York common law, trademark dilution and injury to business reputation under § 368–d of the New York General Business Law, and false advertising and deceptive acts and practices arising under § 349 *et seq.* The only claim requiring separate consideration as between the state and federal causes of action is the trademark dilution claim under § 368–d. Unfair competition requires a likelihood of confusion as to source, *Lambda Electronics v. Lambda Tech, Inc.,* 515 F.Supp. 915, 930 (S.D.N.Y.1981), and Jim Beam did not present evidence of false advertising at trial.

■ New York's anti-dilution statute, General Business Law § 368–d, provides protection "notwithstanding the absence of competition between the parties or the absence of confusion as to the source of the goods or services." *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,* 42 N.Y.2d 538, 399 N.Y.S.2d 628, 632, 369 N.E.2d 1162, 1165 (1977). Section 368–d does, however, require "a likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name."

■ Jim Beam must prove two elements in order to satisfy § 368–d: 1) distinctiveness of the mark; and 2) likelihood of dilution. *W.W.W. Pharmaceutical,* 984 F.2d at 576. A

third consideration, the predatory intent of the junior user, is also relevant. *Id.* The anti-dilution statute protects only trademarks that are quite strong and well-known. *Sally Gee, Inc. v. Myra Hogan, Inc.,* 699 F.2d 621, 625 (2d Cir.1983).

■ I have already concluded, see *supra,* that JIM BEAM is a strong mark. Turning, however, to the second element under § 368–d, plaintiff must show a likelihood of dilution, that is, a whittling down, blurring or tarnishing of the identity or reputation of the mark. *Id.;* 3 R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 84.2 at 954–55. Here I conclude, there is no likelihood of dilution. The products are sufficiently distinct—an Irish stout and a Kentucky bourbon, the heritage of both products clearly portrayed in their respective trade dresses—that there will be no blurring. Nor, since BEAMISH is a quality stout, is there a risk of tarnishing.

■ Finally, the lack of predatory intent on the part of BEAMISH—indeed, its clear good faith in this entire matter—mandates the resolution of the dilution issue in defendant's favor. The state law claims are accordingly dismissed as well.

The foregoing constitutes the Court's findings of fact and conclusions of law and is so ordered. Submit judgment on notice.